# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## M'Cay *against* Hugus.

J. M. devised to his widow, " the thirds of all my personal estate, goods, and chat-tels, and the thirds of all my real estate during her widowhood; to my son S., the half of all the remaining goods and chattels, lands and tenemonts, to have and to hold forever; to my younger son, J., the remaining half of my goods and chattels, lands and tenements, to have and to hold forever, share and share alike;" J. M. made no fur-ther disposition of the residue of the estate devised to his wife. *Held*, to be a devise of the residue to the two sons, who took the whole estate after the death of their mother.

It is not competent to give evidence by the scrivener, as to what the testator meant by devises contained in his will.

ERROR to the common pleas of *Westmoreland* county.

This was an action of ejectment, by the heirs-at-law of John M'Clure, deceased, against John Hugus and Abraham Burnhart, who were purchasers from the devisees, under the will of John M'Clure, deceased.

The questions which arose depended upon the construction of the will.

The plaintiffs gave in evidence, the will of John M'Clure, deceased, which is as follows:

"In the name of God, amen; I, John M'Clure, Sen., of Mount-pleasant township, Westmoreland county, being weak of body, but

VI.—2 T

[M'Cay v. Hugus.]

of sound mind, &c., do make and publish this, my last will and testament, in manner and form following, that is to say: First, I give and bequeath unto my beloved wife, Mary M'Clure, the thirds of all my personal estate, goods, and chattels, and the thirds of all my real estate, during her widowhood. I do also give and bequeath unto my eldest son, Samuel M'Clure, the half of all the remaining goods and chattels, lands and tenements, to have and to hold forever. I do also give and bequeath unto my younger son, John M'Clure, the remaining half of my goods and chattels, lands and tenements, to have and to hold forever, both shares alike and alike. I do also give and bequeath, unto my three daughters, Elizabeth, Hannah, and Mary M'Clure, the sum of 80 pounds each. I do also give and bequeath unto my daughter, Jennet Johnston, the sum of 25 pounds, the sum or sums of which said several legacies or sums of money, I will and order shall be paid, unto the said respective legatees, within the term of one year after my decease, to be paid to them, respectively, out of my goods and chattels, lands and tenements, by Samuel and John M'Clure, to pay alike and alike. I further give to my son, Samuel M'Clure, a bay mare, known by the name of Julip, and unto my son, John M'Clure, I also give a bay filley, a colt out of the mare Samuel Peebles got, which they are to have, exclusive of my beloved wife's third. And I do appoint, &c., dated the 6th of October 1795, proved the 31st of December 1795."

The question presented for consideration was, what estate the widow and two sons took under the will of John M'Clure. On the part of the plaintiffs, it was contended that the widow took a life estate, as to one third, and that the sons took the other two-thirds of the tract, in fee simple, but that the testator made no disposition of the reversion of the one-third, devised to his widow, and, therefore, as to that one-third, he died intestate, and the reversion descended upon all his heirs, according to the statute of distributions, and that they, representing his four daughters, are entitled to the proportion that they would have been entitled to, if living.

The defendants contended on the other hand, that, by the will of the testator, the whole fee simple in the land, passed to his two sons, although they were not entitled to the possession of but two-thirds, until the decease of the widow. For the purpose of fortifying this construction of the will, upon which they rely, they gave in evidence, the deposition of John Bonnett, one of the executors of John M'Clure, who testified that he drew the will, and proceeds to state his belief as to what was the intention of the testator, in the disposition which he made of his property. This deposition was read by consent, with the understanding that, if the matter therein contained would not have been legal testimony if objected to, the court should instruct the jury to disregard it and throw it out of view.

[M'Cay v. Hugus.]

The court below (White, president) were of opinion that the deposition of John Bonnett was not competent evidence; and that upon the legal construction of the will, the plaintiffs were not entitled to recover. That the estate in fee, upon the death of the widow, vested in the two.sons.

*Findlay* and *Foster*, for plaintiffs in error, cited 3 *Mod.* 229; 5 *Term Rep.* 558; 1 *Bos. & Pull.* 558; 2 *Bos. & Pull.* 247; 4 *Amer. Com. L.* 394; 1 *Wash. Rep.* 96; 1 *Call.* 337.

*Coulter*, for defendants in error, cited *Co. Lit.* 6, *sect.* 1; *Littleton* 233; 3 *Watts* 471.

The opinion of the Court was delivered by

HUSTON, J.—The plaintiffs in this cause are the daughters and descendants of the daughters of John M'Clure, and the question arose on his will, in which, after the preamble, he says: " I give and bequeath to my beloved wife, Mary M'Clure, the thirds of my personal estate of goods and chattels, and the thirds of my real estate, during *her widowhood.* I do also give and bequeath to my oldest son, Samuel M'Clure, half of all the remaining goods and chattels, lands and tenements, to have, and to hold forever. I do also give and bequeath to my youngest son, John M'Clure, the remaining half of my goods and chattels, lands and tenements, to have, and to hold forever, both shares alike. I give and bequeath to my three daughters, Elizabeth, Hannah and Mary, 80 pounds each;" then to Jennet Johnson, a married daughter, 250 pounds, and directs these legacies to be paid by his sons, in one year after his death, &c. &c.; proved December 1795. It was agreed that the sons took the land devised to them in fee; but the question was, whether they took the remainder, in the one-third, devised to the widow during her widowhood. The plaintiffs contended that it was undisposed of by the will, and descended to the heirs of the testator. The defendants who claim under the sons, say it was devised to the sons.

The cause was well argued; among the authorities cited, perhaps not one meets this case. 5 *Term. Rep.* 558, and 1 *Bos. & Pull.* 558, and 2 *Bos. & Pull.* 247, which is the same case in different courts, has this difference; the question there arose on a devise to the widow in general terms, such as she contended gave her a fee, and then followed a general devise of all the residue of testator's estate to the same widow. The final decision was, that under the first devise, she took only an estate for life in the lands, and that the residuary clause did not enlarge this life estate in the lands there named, but might apply to property not before named; where however, a present interest for a definite time, as for years or for life is given to one, and then a devise of all the remaining estate,

[M'Cay v. Hugus.]

real and personal, or of all lands and tenements, and all personal estate, a remainder or reversion will pass by the residuary clause.

In 2 *Ventr.* 285, a man bequeaths sums of money to different legatees, and certain freeholds to his wife, for life, and then disposes of some other property; and then, the better to enable his wife to pay the legacies, gives all his messuages, lands, tenements and hereditaments, to her and her heirs, and held the reversion after her life estate passed; and *Aleyn* 2, was cited, where a man devises to A, certain lands for six years, and certain other lands to B in fee, and then all the rest of his lands to his brother. The brother took the reversion after the expiration of the six years, during which the devise to A continued.

In 3 *Atk.* 485, we find a devise of certain premises to the testator's wife for life; then follow many devises to other persons, and the will concludes, all the residue and remainder of my goods and chattels and real estate, I give to my wife, &c. &c. Lord Hardwicke notices the cases above cited and others, and considers the law settled that the wife took the reversion in the lands given to herself for life.

The same doctrine, in cases where the first estate is expressly for years or for life, is recognized in 1 *Wash.* 112. Though where the estate was given, one farm to one son, another farm to another son, and the testator had a third farm, and devised all the rest of his goods and real estate to his wife and daughter, it was held, though the devises to the sons might, in law, be held only for life, yet the reversion after the death of the sons, did not pass to the widow and daughter, because, says the judge, the testator intended to give each of his sons a fee, and thought he had done so; and therefore, never intended to give his widow and daughter a reversion of which he had no suspicion. We have nothing to do with the latter part of the opinion; the first part alone applies to this case.

Some of the cases cited, turned on the word used in the residuary clause, as hereditaments, in others, real estate, in another, all the rest of his land, &c.; perhaps no one of these words, in a certain connection with other words, might pass in reversion, though each, in certain cases, has rightly passed a remander or reversion. In the present case, the devises to his sons are in fee, to each of them forever. The devise to the widow is of goods, and one-third of the lands is during widowhood. The testator knew these would fall into his estate. Instead of giving to each of his sons one-third of his goods, and one-third of his lands and tenements, which would have been the most obvious method, if he meant they should have no more; he gives to Samuel, the half of the remaining goods and chattels, lands and tenements, and to John the remaining half of the goods and chattels, lands and tenements, to each forever, both shares alike. Now he knew the estate to his wife could not last many years, that it would fall into his estate on her death or marriage, and consi-

[M'Cay v. Hugus.]

dering it then as a whole, he gives half to each of his sons.   There is no question, but that the words lands and tenements, may pass every interest which a testator has in real estate.   It may be observed, that in the next sentence, the testator proceeds to make provision for his daughters, to each of whom, he gives a pecuniary legacy, but no part of either goods or land.

Judgment affirmed.